# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3379

_____

United States of America

*Plaintiff - Appellee*

v.

John E. Searcy, III

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Harrison

_____

Submitted: April 12, 2016
Filed: June 7, 2016
[Unpublished]

_____

Before WOLLMAN, BEAM, and MURPHY, Circuit Judges.

_____

PER CURIAM.

After John E. Searcy, III, pleaded guilty to embezzlement of public funds, in violation of 18 U.S.C. § 641, the district court[1] sentenced him to 30 months'

---

[1] The Honorable P.K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas.

imprisonment. Searcy argues that his sentence is substantively unreasonable. We affirm.

In 2012, a Social Security Administration (SSA) special agent received a tip that Searcy had assisted in his father's death, then burned his father's body on a woodpile in their backyard, and thereafter converted his deceased father's SSA benefits to his own use. Searcy's wife was later contacted, under the guise of updating information she had on file with the SSA. When asked about Searcy's father, Searcy's wife said that the elder Searcy continued to receive mail at their home, even though he had been away for four years, seeking nontraditional medical treatment. She also advised that once he was well, Searcy's father would live with them again. The SSA and the Arkansas State Police interviewed Searcy, who stated that his father was alive and sometimes returned home for money. Searcy acknowledged that he sometimes spent his father's SSA benefits on personal bills and living expenses, even though he knew those benefits were for his father. Searcy reiterated that his father was seeking alternative medical treatment.

In early 2013, the Arkansas State Police again interviewed Searcy, who then admitted that he had assisted in his father's death on November 11, 2007. According to Searcy, after his father had overdosed on drugs, Searcy placed a bag over his father's head to ensure his death. Searcy then burned his father's body and scattered the ashes and bones. Searcy explained that he and his father previously had decided that Searcy would not report the death so that Searcy could receive his father's SSA benefits. All told, Searcy misappropriated $70,530.40 in public funds.

After completing an investigation, the county attorney's office advised that it would not press charges against Searcy for his father's death because, assuming the truth of Searcy's confession, the statute of limitations had expired on the relevant charges of manslaughter and abuse of a corpse. In February 2015, a federal grand jury returned a one-count indictment, charging that Searcy "did willfully and

knowingly embezzle and convert to his own use money in excess of $1,000 from the Social Security Administration, in violation of 18 U.S.C. § 641."

During the sentencing hearing, the district court determined that Searcy's total offense level was 12, that his criminal history category was I, and that his advisory sentencing range under the U.S. Sentencing Guidelines Manual (Guidelines) was 10 to 16 months' imprisonment. Before hearing from the parties, the district court indicated that it intended to vary upward from the advisory Guidelines range.

Searcy asked the district court to impose a term of probation. He argued that his father was abusive and controlling and that their relationship caused Searcy to develop post-traumatic stress disorder. He argued further that his father was bed-ridden and terminally ill at the time Searcy assisted in his death and that Searcy's assistance showed the extent of "the control that his father had over him." Searcy pointed to his lack of criminal history and said that he had abided by the law and secured full-time employment as a personal care assistant while released on bond. When asked about frivolous federal lawsuits that he had filed against state and federal officials between 1998 and 2004, Searcy replied that he had been forced by his father to file them and that none had been filed after his father's death.

After considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the district court determined that a sentence within the advisory Guidelines range did not adequately address Searcy's offense conduct. The district court traced the history of his embezzlement, which "all started with a co-bank-account that [Searcy] had with his father." The district court recounted that Searcy had assisted in his father's death, burned his father's body, scattered the remains, concealed the fact that his father had died, and cancelled his father's Medicare coverage so that the benefit payments would increase. The district court found that Searcy's actions showed "knowledge and intent to defraud the Social Security Administration by depraved means." The district court also found that Searcy "concocted this story that his father didn't believe in

-3-

traditional medicine, that he moved away somewhere for alternative treatments." Searcy's wife's account of the same story to an SSA manager indicated to the district court that Searcy "used other people to help carry out this lie for a period of six years." The district court acknowledged Searcy's gainful employment while released on bond, but contrasted those efforts with the fact that he had been unemployed throughout the six years he wrongfully received his father's SSA benefits. The district court then varied upward and sentenced Searcy to 30 months' imprisonment.

Searcy argues on appeal that his sentence is substantively unreasonable because the district court failed to consider and properly weigh the sentencing factors. We review the substantive reasonableness of a sentence "under a deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41 (2007). "A district court abuses its discretion when it fails to consider a relevant factor, gives significant weight to an irrelevant or improper factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case." United States v. San-Miguel, 634 F.3d 471, 475 (8th Cir. 2011) (quoting United States v. Jones, 509 F.3d 911, 913 (8th Cir. 2007)); see also Gall, 552 U.S. at 59 (noting that the range of choice dictated by the facts of a case was significantly broadened after the Guidelines became advisory).

Searcy contends that the district court should have given more weight to the mitigating factors of his mental illness, his lack of criminal history, his efforts to rehabilitate himself, and his low risk of recidivism. The district court considered these arguments, however, and reasonably determined that an upward variance was necessary due to the depraved circumstances of the offense. Searcy also argues that the district court should not have given any weight to the frivolous federal lawsuits he filed because he had been coerced into filing those lawsuits by his abusive father. Again, the district court reasonably found that Searcy was not credible and that the lawsuits were filed of his own volition. Finally, we reject Searcy's argument that the

district court unfairly sentenced him for the role he played in his father's death and in disposing of his father's corpse. His father's death allowed Searcy to embezzle the public funds distributed by the SSA. Searcy's disposal of the corpse allowed him to conceal his father's death and continue to embezzle public funds. The district court acted within its broad discretion when it weighed the sentencing factors and decided to vary upward from the advisory Guidelines range. See San-Miguel, 634 F.3d at 476 ("The district court has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." (quoting United States v. Bridges, 569 F.3d 374, 379 (8th Cir. 2009))).

Searcy argues that the district court failed to satisfy its duty to avoid unwarranted sentence disparities because it sentenced him more harshly than a defendant from the Eastern District of Arkansas who had defrauded the SSA of more than $200,000 and was sentenced to probation. Searcy has not explained how the defendant in that case was similarly situated to Searcy, particularly in terms of the nature and circumstances of the offense, and thus we cannot say that the district court erred in sentencing Searcy to a term of imprisonment.

The judgment is affirmed.

_____